MATTER OF HUANG

In Deportation Proceedings

A-20548982

*Decided by Board September 27, 1977*

(1) An alien who establishes a priority date by registration with a U.S. consulate abroad, can only lose that priority date by termination of registration. Denial by the Service of a subsequently filed application for permanent residence filed under section 245 of the Immigration and Nationality Act will not cause the alien to forfeit his priority date.

(2) Denial by a District Director of a section 245 application, followed by issuance of orders to show cause, effectively terminates that application. Thereafter a new "filing" is required before an immigration judge.

(3) Where respondent renewed his section 245 application in deportation proceedings at a time when a visa number was not immediately available to him, he was statutorily ineligible for adjustment under section 245 of the Act and the immigration judge properly denied the application.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant student—remained longer

ON BEHALF OF RESPONDENT: Hiram W. Kwan, Esquire
840 North Broadway, #200
Los Angeles, California 90012

BY: Milhollan, Chairman; Wilson, Maniatis, Appleman, and Maguire, Board Members

In a decision dated July 31, 1975, the immigration judge found the respondent deportable as a nonimmigrant who remained beyond the authorized period of admission under section 241(a)(2) of the Immigration and Nationality Act, denied his application for adjustment of status under section 245 of the Act, and granted him voluntary departure in lieu of deportation. The respondent has appealed from that decision. The appeal will be dismissed.

The respondent, a native and citizen of China, conceded his deportability. The only issues on appeal involve his application for adjustment of status under section 245.

The respondent initially submitted his application for a nonpreference immigrant visa to the United States Consulate in Tokyo, Japan. The application, in which he claimed exemption from the labor certification

requirements of section 212(a)(14) of the Act as an investor within the contemplation of 8 C.F.R. 212.8(b)(4), was accepted and he was given a nonpreference priority date of May 14, 1974. Approximately one month later the respondent filed an application for adjustment of status with the District Director. The District Director, however, concluded that the respondent did not qualify as an investor and denied the application on February 19, 1975. Deportation proceedings were instituted on April 7, 1975. At the hearing held on July 31, 1975, the respondent again applied for adjustment of status to the immigration judge, claiming an exemption from the labor certification requirements of section 212(a)(14) on the basis of the same investment. The immigration judge also denied the application, but on the ground that an immigrant visa number was not then available to the respondent and, as a consequence, he was statutorily ineligible for the relief. In addition, he held that the District Director's denial of the respondent's section 245 application resulted in the respondent's loss of the May 14, 1974, priority date.

On appeal, the respondent asserts that he remains entitled to the priority date accorded him by the United States Consulate. We agree with counsel's claim that the denial of the respondent's application for adjustment of status did not result in a forfeiture of his previously established priority date. The priority date which was accorded the respondent by the United States Consulate is the date he was found to be prima facie qualified as an immigrant and was registered on the consular waiting list. See 22 C.F.R. 42.63. That date is not lost because the respondent applied for adjustment of status and his application was denied. See generally 8 C.F.R. 245.1(g)(2); *Matter of Ro*, Interim Decision 2551 (BIA 1977). Only upon the termination of his registration does the alien lose the priority date established by the United States Consulate. Section 203(e) of the Immigration and Nationality Act, amended by Immigration and Nationality Act Amendments of 1976, Pub. L. 94–571, 90 Stat. 2703.

The principal issue on appeal, the respondent's eligibility for adjustment of status, presents a more difficult question. Section 245 of the Act, as it existed before the Immigration and Nationality Act Amendments of 1976, Pub. L. 94–571, 90 Stat. 2703, required an applicant for adjustment of status to establish that he was eligible to receive an immigrant visa and was admissible to the United States, that an immigrant visa was immediately available to him at the time the application was approved, and that he merited the relief in the exercise of discretion. The question presented is whether the respondent has established that an immigrant visa was available to him, as required by the statute.

Immigrant visa numbers were available to nonpreference immigrants on the date the I-485 was submitted to the District Director. However, in June of 1975 nonpreference visa numbers for natives of China became

completely unavailable and remain unavailable as of the date of this decision. See Department of State Bulletins on the Availability of Immigrant Visa Numbers. As a consequence, no visa number was available to the respondent when he made his application to the immigration judge on July 31, 1975.

The respondent acknowledges the fact that a visa number was unavailable at the time of the deportation proceedings and remains unavailable. He insists, however, that a visa number need only be available when the application was "filed." It is the respondent's contention that his application was filed when it was submitted to the District Director and that this filing remains effective even though the application was denied by the District Director on the merits and was later submitted to an immigration judge in deportation proceedings when visa numbers were no longer available. According to the respondent's argument, if the immigration judge finds that he has established his claim to investor status, the immigration judge should order his case held in abeyance until such time as a visa number does become available, pursuant to Operations Instructions 245.4(a)(6). That Operations Instruction provides in pertinent part:

> In any case in which, at the time the application was filed, the Visa Office Bulletin indicated that an immigrant visa number was available, but the application cannot be approved *solely* because a visa number is not available at the time the processing of the case is completed, it shall be held in abeyance pending the allocation of a visa number by the Visa Office. (Emphasis supplied.) [1]

The regulations provide that an alien, other than an alien against whom deportation proceedings have been instituted, shall make application for adjustment of status to the District Director. 8 C.F.R. 245.2(a)(1). No appeal is provided under the regulations from an adverse decision on the application by the District Director. However, in the event deportation proceedings are instituted, as here, the alien may again make an application to the immigration judge.[2] An appeal to this

---

[1] As noted earlier, the statute, prior to its amendment, referred to visa availability at the time an application is approved. In view of large backlogs of applications, however, months often elapsed between the date of filing and the date of approval. An alien might establish eligibility in all respects, including visa availability, at the date he filed his application only to see the quota close before the Service was able to act on his application. In an apparent effort to protect the alien in this situation, the Service instituted the Operations Instruction set out above. We note that under the amended section 245(a)(3), the alien only need establish the availability of an immigrant visa at the time the application is "filed," not "approved" as the subsection previously read. Thus, the amendment appears to codify the actual practice which developed through the use of the Operations Instruction. See Immigration and Nationality Act Amendments of 1976, Pub. L. 94–571, 90 Stat. 2703.

[2] 8 C.F.R. 245.2(a)(4). "*Decision* . . . No appeal shall lie from the denial of an application by the district director but such denial shall be without prejudice to the alien's right to

Board is provided from a decision by the immigration judge in deportation proceedings. As the regulations indicate, we have jurisdiction to review only the immigration judge's decision and not the earlier decision rendered by the District Director. It is our view that the denial by the District Director and the issuance of an Order to Show Cause effectively terminate the original application. Thereafter, a new "filing" is required before the immigration judge. Were we to hold otherwise, we would, in effect, be indirectly reviewing the District Director's decision on the merits of the application, despite the fact that we are not given jurisdiction to do so under the regulations.

Although the application before the immigration judge is sometimes predicated on the same facts as was the application to the District Director, this is not always the case. A considerable period of time may have passed since the application was submitted to the District Director. In some cases, such as those in which the alien bases his application on an investor claim, the evidence presented to the immigration judge in deportation proceedings may bear only slight resemblance to that considered by the District Director.

Were we to hold that once the alien submits an application for adjustment of status at a time when a visa number is available, he has forever established that he has met the visa availability requirement, regardless of whether he can show that he otherwise qualifies for the relief, there would be strong inducement for aliens to remain in this country in violation of law, in the hope of some day establishing by subsequently developed facts not even related to the original application, that they are in all ways qualified for the relief. This likelihood enhances our conviction that our interpretation of the regulation and Operations Instruction is the correct one.

In three recent decisions, in which we did not have the present issue squarely before us, language appears which may have contributed to some confusion in interpretation. See *Matter of Jo*, Interim Decision 2412 (BIA 1975), *Matter of Ho*, Interim Decision 2499 (BIA 1976), *Matter of Ko*, Interim Decision 2500 (BIA 1976). In *Matter of Jo*, the alien, as here, filed an application with the District Director which was denied before he applied for adjustment of status to the immigration judge. While we laid emphasis on the fact that the two applications were predicated on totally different investments, that fact was not critical to our holding. What was critical was the fact that the first application had been denied by the District Director and that visas were no longer available when the second filing occurred before the immigration judge. *Matter of Ho* involved solely an application before an immigration judge;

renew his application in proceedings under Part 242 of this chapter." The application may be made originally to the immigration judge, without any previous submission to the District Director. Cf. *Matter of Ho*, Interim Decision 2499 (BIA 1976).

hence, the issue raised in the respondent's case of the continuing vitality of a previous application to a District Director was not involved. We held in *Ho* that Operations Instruction 245.4(a)(6) should be given the same force and effect before an immigration judge as in the case of an application made to the District Director. In *Matter of Ko*, we found that the District Director had denied the application because of failure to establish investor status—that the alien was still unable to qualify as an investor at the time of filing with the immigration judge, quite apart from inability to show visa availability, and that he clearly could not claim the benefits of Operations Instruction 245.4(a)(6). To the extent that any language in the three decisions discussed above suggests a conflict with our holding here, we recede from that language.

The respondent in the present case filed his application for adjustment of status with the immigration judge at a time when visa numbers for nonpreference immigrants from China were not available. Consequently, he has failed to establish that a visa number was immediately available to him as required by section 245. The Operations Instruction, upon which the respondent relies, is not applicable to his case. That provision can only be invoked by an immigration judge in a situation where a visa number was available when an application was filed with him but where the quota closes before he finds that the applicant is eligible for section 245 relief.

The original grant of the respondent's voluntary departure time was 61 days. That period has expired. In accordance with our decision in *Matter of Chouliaris*, Interim Decision 2572 (BIA 1977), we will grant the respondent 30 days from the date of this decision in which to depart voluntarily from the United States.

ORDER: The appeal is dismissed.

FURTHER ORDER: The respondent is granted the privilege of voluntary departure without expense to the Government on or before 30 days from the date of this order, or any extension beyond such date as may be granted by the District Director, and under such conditions as he may direct; and in the event of a failure so to depart voluntarily, the respondent shall be deported as provided in the immigration judge's order.